Please be seated. Thank you, Madam Clerk. Please be seated. Okay. Good morning and welcome to the Ninth Circuit Court of Appeals. My name is Morgan Christen. I'm one of the judges on the circuit court. My chambers are in Anchorage, Alaska. I'm sitting today with Judge Tashima, whose chambers are here, right here in Pasadena, and Judge Van Dyke, who has chambers in Reno. I always want to say Las Vegas, but it's Reno. I just have a little bit of housekeeping. So I'll try to do this quickly. I need to say for the record that there were two cases submitted on the briefs yesterday, Monday, June 10th. They are United States v. Johnson, 23-574, and Photo Fix-It Pro v. Costco Wholesale, 23-55548. For the cases on today's calendar, June 11th, we have three submitted cases. For the record, they are Larios-Guerra v. Garland, 21-70892, Acosta-Ochoa v. Garland, 22-1464, and Carrillo-Velasquez v. Garland, which is 23-158. Which brings me to the first case on the oral argument calendar, United States v. Patterson, 22-50287. And, counsel, if you just give me one more minute, you can come right on up to the podium. I just have to get my iPad and stuff situated here. Okay, I'm ready. All right. Good morning, Your Honors, and may it please the Court. I'm Laura Schaefer from the Office of the Federal Public Defender on behalf of Appellant Derek Patterson. I'd like to reserve three minutes of time, and I'll keep an eye on the clock. Great. Thanks. Your Honors, the question before this Court in this appeal is whether proper application of the sentence enhancement entitled The Hate Crime Motivation or Vulnerable Victim Sentence Enhancement requires the government to prove, beyond a reasonable doubt, that the defendant was motivated by hate. This Court should find that it does, because any other reading would subvert congressional intent, would undermine the purpose of the statute, would conflict with this Court's own past precedent, in addition to the government's stated position in prior cases and in guidance documents, and would lead to absurd results. So are you arguing, Counsel, that there has to be an express finding? In the district court below, there has to be an express finding of hate or animus motivating the conduct? That's my question. Yes, that's it. As opposed to a finding that the defendant selected his victim because of the particular trait. Well, our argument, Your Honor, is that the language because of the protected trait actually imports an animus requirement. Right, and that's different than an express finding. So, in other words, my question, maybe I wasn't very clear, sorry. My question is, if there's a finding in the district court that the defendant selected his victim because of fill in the blank, would that suffice? Oh, my apologies, Your Honor. Not without more, not without an inquiry into whether the because of looked into whether or not the defendant acted with an animus motivation against the victims in the case. And the reason for this, Your Honor, is that the term because of, as used in the statute, is ambiguous. And this court has previously held in numerous cases, including, for example, in Bliss Sequoia, Inc., and Risk Advisors versus, I don't have the full site there, but Bliss Sequoia, Inc., that's what we'll call it, that because of is a statutory phrase that is commonly considered to be ambiguous because it's unclear exactly what because of selection might mean in a given context. And there are some examples of this in the briefing. For example, an example from a law review article that if you were to penalize someone for that, or if you were to say that someone hit a pedestrian on a sidewalk and the car hit the pedestrian because they were in the sidewalk, because of their presence in the sidewalk, there is a reasonable inference that the question is did they do so because they had some sort of feeling of discontent to the pedestrian being in the sidewalk or simply because they did not observe that the pedestrian was there in the sidewalk. These are the kinds of questions that language like because of can lead to. But what we have here is we actually have several express statements of congressional intent in terms of crafting this enhancement. So we know from the congressional record and we know based on the U.S. Supreme Court case that the language of this enhancement was modeled after that because of in this case was actually intended to import an animus requirement into the selection criteria. And if we look at, for example, the prosecution of federal hate crimes, so I'm thinking, for example, of cases where the government chooses to actually proceed on a hate crime prosecution, we do actually find several cases in which this court has also interpreted the because of language that's also used in some of the hate crime prosecutions to mean because of motivation by racial animus. Seems like you're biting off more than you need to. I think there's briefing regarding the Second Circuit's opinion in rate terrorist bombings. And that, of course, that language is in the context of bombing an American embassy. The victims were American. And in that case, the Second Circuit, I think, it's my paraphrase, decided it didn't matter why the individual, the defendant, selected those victims. Could have been differences of opinion about their political views. He argued it wasn't their citizenship. But what the Second Circuit said is it didn't matter why. Why he'd selected them, the fact is he had selected them, and that was enough. But I think you're arguing a different theory here. You're wanting us to go farther than that. Yes, Your Honor. We would argue that, first, the in-rate terrorist bombings case can't be imported to apply to the facts on the record below here. The circumstances of the crimes are so incredibly different. But as to the passing reference to the hate crime motivation enhancement in in-rate terrorist bombings, our reading is slightly different of how the Second Circuit— I know. I just don't find it persuasive. And what I'm trying to figure out so that I don't take up too much of your time is I'm curious about why you're resisting. Because it seems to me you would prevail if we just needed a finding that the victim selected his— I'm sorry, the defendant selected his victim because of the particular trait. Well, I believe at the district court below, Your Honor, the district court did make a finding in the district court's view that the victims were selected because of a particular trait. It sounded a whole lot more like a vulnerable victim analysis, though. Yes, we agree, Your Honor. Most of the evidence—this is one of our other reasons for why we think the enhancement doesn't apply in this case because a lot of the evidence that was submitted below was not actually evidence that was developed on a factual record, but was rather argument, speculation about why the victims may have been targeted. It wasn't evidence beyond a reasonable doubt to actually show what was motivating the defendant's conduct and to actually show whether or not that is why these victims were targeted. And what this enhancement requires and what the legislative context shows us, the mischief that this enhancement was meant to address are crimes motivated by animus, and that's what I think the because of language means in this enhancement. And I think reading it without the because of animus understanding would not give meaning to what Congress was trying to do here, which was to punish hate crimes, not selection crimes. So if I shoot someone of a different race, that's not necessarily a hate crime. It's a horrible crime. It's not necessarily a hate crime. If I shoot them because they're of a different race, that's a hate crime. That's my reading of the record, and that's my reading of the inmate terrorist bombings case. But I think you have a different view of that. I think I would agree with your reading of that, Your Honor, if there was evidence that was developed. If, for example, you had then admitted that the reason that you committed the shooting was because of the race of the victim, we don't have any such evidence here. We don't know what motivated. I've taken you below your three-minute mark. Let me just check. Since I've taken your time, I'll give you another little bit. Nothing further. So we'll reserve the bulk of your time. When you come back, you'll have three minutes. All right. Thank you, Your Honor. Thank you. Thank you for your patience with my questions. We'll hear from the government. Good morning, Your Honors. May it please the Court. Bram Alden on behalf of the United States. I want to start with the plain language of the guideline because I think that's where the analysis really should begin and end. The words animus tor do not appear in the guideline provision. It simply requires intentional selection because of a protected characteristic. Here, that protected characteristic was sexual orientation. That should really end the analysis into whether animus is required. But I do think that it's important to note that the origination of this test was with Wisconsin v. Mitchell in which the hate crime enhancement was applied or actually the Wisconsin statute that permitted a higher statutory maximum based simply on intentional selection because of a protected characteristic. There was no requirement of animus in the Wisconsin statute. There was no requirement of animus in the Violent Crime Control Act of 1994 that directed the Sentencing Commission to create this enhancement, and there is no requirement in the enhancement itself. Well, for an express finding. Correct, and I don't think an implied finding or anything of the sort is required either. I agree with Your Honor's reading of terrorist bombings, which is that the underlying motivation for why someone selected a victim because of the protected characteristic is not the inquiry. And when the defense points to cases in which animus has been found, that is sufficient but not necessary to prove that there was selection because of race in most of those cases. Animus is often very strong evidence that someone is selecting because of a protected characteristic, but it is not something that is required. So turning then to really whether the district court abused its discretion in finding that victims were selected because of sexual orientation in this case, the answer is no, and I would point to three reasons why. The victims here were selected because they were vulnerable, because they were accessible, and because they were susceptible to this defendant's particular scheme. And I understand Your Honor sees some overlap between this and the vulnerable victims enhancement. I would differentiate those two enhancements by pointing out that a victim to be eligible for the vulnerable victim enhancement has to actually be vulnerable. And what the hate crimes enhancement is looking at is the defendant's intention or selection or perception of the victims as more vulnerable. So, for example, here it does not matter whether gay men were particularly vulnerable to this defendant's crimes. What matters is that he perceived them as people who he could uniquely target. And the district court found that vulnerability and that perception based on the fact that this defendant called CO a faggot and said, you bitches are all the same, which according to the district court, evidenced defendant's belief that gay men shared characteristics that made them susceptible and vulnerable robbery targets. That's at 1 ER 22 to 23. Accessibility is the second thing that I think the court really should look at here. And the district court made a finding that defendant exploited his victims because he used gay hookup culture, which uniquely normalizes meeting alone in person in a private location on first meeting. And that's at 1 ER 22. But the victim's attributes you're talking about now have to do with their accessibility, their availability. That's not what the guideline's talking about. The guideline is talking about selecting a victim because of, and in this case it would be sexual orientation. Absolutely. And I don't think the district court relied upon a vulnerable victim enhancement. Is this exhausted, vulnerable victim? Sorry? Is the argument exhausted? The argument exhausted? Does the government rely on vulnerable victim in the district court? No. The vulnerable victim enhancement is not something we relied on below, nor is it something we rely on on appeal. I didn't read the record that way either, so I appreciate the confirmation. We have another case on the calendar today with a very similar issue, so I want to make sure that I'm keeping them straight. It sounds like that is the case. So back to the point I'm making, when you talk about accessibility or just to consider that, that's not what the guideline speaks to. It doesn't speak to selecting victim on account of vulnerability or accessibility. And that's the proof that this defendant selected because of sexual orientation. When we're trying to determine whether the district court legally erred, it absolutely did not in saying that all the guideline requires is selection because of a protected characteristic. When this court is trying to determine whether the district court abused its discretion in saying that the guideline applied here and that this enhancement was properly applied, that's when I think you look to what was the rationale behind the district court's decision, which is where accessibility, vulnerability, and susceptibility come into play. Accessibility was something that the district court specifically pointed to in terms of Grindr being the method that this defendant used, a gay hookup site, which the parties agreed in the plea agreement. So it just sounds like what you're kind of doing is merging the vulnerability and concept with the special characteristic concept. Because I think your argument is that you're using other words, accessible, et cetera, but that a particular class of people are vulnerable. They targeted them because of that vulnerability, and therefore that this enhancement is appropriate. But that just makes every time you target a class of people because they're vulnerable, then all of a sudden, I guess maybe you can, is that your argument? No, Your Honor, and he has to intentionally select them based on the protected characteristic. No, I know, but he does so because he thinks, you know, you can imagine somebody targeting females because he thinks that females are, whether they are or not, he thinks that females are particularly vulnerable to being robbed or something like that. And so he's picking them because he thinks that class of people are vulnerable. Let's just assume, kind of a weird thought experiment, but that he doesn't actually have any animus towards females, but he just thinks it's a female. As a female, she has lots of female friends, like females, but just goes after females because he thinks that they're particularly vulnerable. But I think under your argument, if she was picking females because she thought they were vulnerable, then she would be subject to a special characteristic assessment. That's correct, and I think that's where the person... So what is the difference between the vulnerability and the special characteristic? Other than, I guess, you're saying that the only time the vulnerability would count separate would be if I'm just picking a particular person based on their vulnerability, but if I'm targeting a class of people because of a perceived vulnerability, then they're basically the same. I think the way they would be distinguished is, one, just because someone is vulnerable doesn't mean that the defendant is selecting them because of their protected characteristic that makes them more vulnerable. Two, they don't actually have to be vulnerable for the hate crime in the case to apply. But this case is basically like a law school hypothetical about where you're picking a class of people. The argument is, at least, that you're picking a class of people because you perceive them to be vulnerable, but not because of animus towards that class of people. That's what this case is presenting, and so if you take away the animus part, what you're left with is you're just picking a class of people. So I get your point that you might be picking a class for other reasons other than vulnerability, but in this case, that's what this case is about. It's all about picking this class because they thought they were vulnerable, and that's what the judge relied on too. That was one of the things that I think the judge did rely on. And I think the purse snatcher hypothetical is a useful hypothetical to think about in this context. If you pick a woman or all women as your targets because they are women, so you think, I'm going to be a purse snatcher because women are less likely to be able to chase me down, because they are weaker, because they are less likely to call the police, you are picking them because they are women. If you pick the purse as your target— I think that's the fallacy right there. So to get back to what Judge Van Dyke is saying, I just want to push back on this. It seems to me we're merging a modus operandi, a particular scheme, to isolate a victim with a hate crime. This particular scheme was to isolate people by arranging to meet them in their own homes through Grindr. That's a scheme. That's an MO. So the reason why the person is selecting the victims in the purse snatching hypothetical is, if he sees them as women and says, women are weaker, less likely to chase me down, less likely to be able to catch me or call the police, that is different from the purse snatcher who says, it is a lot harder to get a wallet than a purse, and that is why I'm going after purses. That is where the vulnerable victim enhancement and potentially— Significant enhancement. It's a significant enhancement on the sentencing calculation, and it seems to me, under your theory, it would be applicable a lot. I don't think that's the case, Your Honor, because you have to intentionally select based on the protected characteristic, and this is an abuse of discretion standard. Defense counsel pointed to this as a finding that the district court made that this defendant selected victims based on sexual orientation. She just conceded that that was a finding. If it's not a finding, it is at minimum an abuse of discretion standard, and under that standard, this court should affirm. Hang on just one minute. I want to make sure Judge Tashima has a chance. Anything further? Thank you for your argument, counsel. Thank you, Your Honor. Thank you. Counsel, what about opposing counsel's argument that would it be enough in this hypothetical for a defendant to select a victim because the defendant is basically operating on a bunch of stereotypes? He's assuming that if I select a woman that she's going to not be able to chase me down for all he knows she might be an Olympic athlete and faster than he is. But if he's operating on a set of stereotypes, would that be enough? He's still selecting women as his victims under this hypothetical. No, Your Honor. That would not be enough under our reading of the enhancement. The enhancement is titled the hate crime motivation enhancement and is looking to whether the defendant had a hate crime motivation in committing the underlying crimes. And as Your Honors have just pointed out and as the preceding discussion just demonstrated, there are a lot of scenarios in which if all you rely on is intentional selection because of but you don't actually say what because of means or defines because of in any meaningful sense to give meaning to what the enhancement is intended to capture, it could be applicable in a wide range of cases beyond which those that Congress clearly intended it to apply. What I'm suggesting is I'm not so sure it would be insufficient for a district court to say that I'm going to apply the enhancement because this defendant selected his victim on the basis of gender, full stop. But I think it becomes a really different case if the district court says the defendant makes a finding that the defendant selected his victims because he believed that men would be these men in particular would be and then fill in the blank, have these other attributes. Right. Well, if I understand Your Honor's question correctly, it's again getting to whether bias-motivated or stereotype-motivated conduct is sufficient. Well, I'm getting back to this, and I'm just not doing it very artfully. But at the beginning of the argument, you pushed back and said a finding that the defendant selected his victim because of the protected trait would not be enough. And I'm not so sure I agree with that. It seems to me if that's all that had happened here, that might be fine. I see what you're saying, Your Honor. Yes, I think it's because we're sort of getting into the weeds again of what because of is supposed to mean in the statute and what because of the sexual orientation means. But I would just like to say that in this case, there was not a record developed below to answer these questions. And this enhancement has a special evidentiary requirement. It has a beyond a reasonable doubt enhancement requirement, application requirement, which is rare among the guideline enhancements. And I'd just like to quote from one of the congresspeople who was speaking in favor of this act passing, just saying, proving the hate element at trial also allows the defendant to benefit from the rules of evidence by cross-examining witnesses and excluding illegally seized evidence. And the congressional record that I'm citing is referenced in the reply briefing. But just throughout this, what we see, Your Honors, is that there was an assumption that there would be a high evidentiary burden to actually interrogate the reasons for the selection, and we don't have that here. The reasons for the selection on the record here are total speculation because the government was not held to its burden below beyond a reasonable doubt. So just one follow-up. Under the government's view, it seems to me that every male-on-female rape would be a hate crime, unless it was somebody that was bisexual or something like that. Am I right in perceiving the government's argument that way? My understanding is that there's significant evidence that it wasn't intended to be used that way, the hate crime motivation. Yes, I agree with your reading, Your Honor. I don't see how under the government's reading you wouldn't be able to do that, aside from the fact that that was one scenario that Congress anticipated, and in the application notes they provided for, and one of the sponsors of the legislation actually said, let's not do double counting in the case of a rape, but also said, unless there is other indicia of animus towards the defendant's gender. So they were concerned about the double counting because just reading it as purely selection-based could lead to its application in all of these various cases where you just show selection, but don't require criteria for what the selection is on the basis of. Got it. Judge Kishima has another question, please. Let me ask this. Suppose we agree with the position that the court should have made a finding, expressed finding, okay, and that that was there, but on the other hand, could we still say that failure was not prejudicial because there's plenty of evidence in the record to support such a finding? In other words, is there case law that supports that? Yes, Your Honor, there is case law that supports that, and first, just to straightforwardly answer your question, I would say no, there is not sufficient evidence in the record that the judge could have made this finding, even if we agree that the wrong legal standard was applied, and I think what Your Honor is getting to is a harmless error standard. And first, I'd like to point out that the government has not raised harmless error in its briefing, so this question as to whether or not even if we agree that the legal standard was incorrect, that a harmless error analysis says that there's no prejudice, this court has said that this should only apply in extraordinary cases where the evidence of prejudice or the evidence that the outcome would be the same is so obvious that there's no need to remand because of the legal error, and we simply don't have that in this case because we also, we don't have facts developed that actually go to the selection. We only have supposition and argument as to why the selection may have come about, but none of that is actually from the factual development on the record. So you're almost saying that even if the court had made a finding, it would still be error because that finding wouldn't be supported on this record? Yes, that is what we believe, Your Honor. There is not sufficient factual findings made to support the enhancement. Thank you. Thank you. We've taken you significantly over your time. Sorry about that, Your Honor. Not at all. We took you over your time, but we appreciate your argument. We'll take that case under advisement. All right.
judges: TASHIMA, CHRISTEN, VANDYKE